IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.                                          Case No. 1:16-cr-10015

BRANDON JAMERSON                                                                           DEFENDANT

**ORDER**

Before the Court is Defendant Brandon Jamerson's Motion to Reduce Sentence. ECF No. 37. The Government has responded. ECF No. 43. The Court finds the matter ripe for consideration.

**I. BACKGROUND**

On October 5, 2016, Defendant was indicted on one count of possessing with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1). ECF No. 1. Defendant later plead guilty to the indictment. ECF No. 18. On March 29, 2018, Defendant was sentenced to one hundred (100) months imprisonment with credit for time served in federal custody, three (3) years supervised release, and a $100 special assessment. ECF No. 28.

On February 28, 2022, Defendant filed his initial Motion for Compassionate Release. ECF No 31. Defendant sought release from confinement due to the ongoing Covid-19 pandemic. *Id*. The Court subsequently appointed the Federal Public Defender to represent Defendant for his motion for compassionate release. ECF No. 33. On June 8, 2022, Defendant filed his renewed Motion to Reduce Sentence, seeking compassionate release pursuant to Section 603 of the First Step Act of 2018 ("FSA"). ECF No. 37. Defendant argues that his medical issues combined with the ongoing pandemic create circumstances justifying his release from confinement. *Id*. The

Government responded in opposition, arguing that Defendant's medical conditions do not warrant release and that his history and characteristics preclude release. ECF No. 43.

## II. DISCUSSION

Relief is available under the FSA if the Court finds: (1) that the requested sentence reduction is warranted due to "extraordinary and compelling reasons;" (2) that the sentencing factors set forth in 18 U.S.C. § 3553(a) support a reduction "to the extent that they are applicable;" and (3) that a reduction would be consistent with any applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). Before an analysis of those factors can begin, the Court must determine if Defendant has exhausted all administrative remedies available. 18 U.S.C. § 3582(c)(1)(A).

### A. Exhaustion of Administrative Remedies

The FSA provides two avenues for a defendant to bring a compassionate release motion to a district court. The defendant may either file a motion once he "has fully exhausted all administrative rights to appeal a failure of the [Bureau of Prisons] to bring the motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A).

The Bureau of Prisons ("BOP") has outlined the administrative exhaustion process in its Program Statement No. 5050.50. In short, a request for compassionate release must first be submitted to the warden of the BOP facility in which the defendant is housed. 28 C.F.R. § 571.61(a). If the warden approves the request, it is sent to the BOP's general counsel for approval. 28 C.F.R. § 571.62(A)(1). If the general counsel approves the request, it is sent to the BOP's director for a final decision. 28 C.F.R. § 571.62(A)(2). If the director approves, he or she will ask

the United States Attorney in the applicable judicial district to file a compassionate release motion on BOP's behalf. 28 C.F.R. § 571.62(A)(3).

If the warden does not respond to the request, the defendant's administrative remedies are deemed exhausted after thirty days. 18 U.S.C. § 3582(c)(1)(A)(i). If the warden denies the compassionate-release request, the defendant must appeal the decision pursuant to the BOP's Administrative Remedy Program. 28 C.F.R. § 571.63(a). If the request is denied by the BOP's general counsel or director, that decision is considered a final administrative decision and the defendant's administrative remedies are exhausted at that time. 28 C.F.R. § 571.63(b)-(c). Failure to exhaust the administrative remedies available with the BOP forecloses the consideration of any motion for compassionate release on its merits. *See U.S. v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020).

In this matter, Defendant requested release from his warden in December 2021, and never received a response. ECF No. 37-1. The Government does not contest that Defendant has exhausted his administrative remedies and is eligible to file his request for relief directly with this Court. ECF No. 43, p. 4-5. Accordingly, the Court finds that Defendant has exhausted his administrative remedies and his request for release may be evaluated on the merits.

### B. Extraordinary and Compelling Reasons

Pursuant to the FSA, the Court can grant Defendant's request for a sentence reduction "if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Congress has not defined what constitutes "extraordinary and compelling" reasons, although it did note that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t). Instead, the Sentencing Commission was directed to

3

promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id.* Thus, the Court looks to the Sentencing Commission's policy statement in the United States Sentencing Guidelines ("USSG") as a starting point in determining what constitutes "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i). *See id.*

The relevant policy statement contemplates a reduction in the term of imprisonment if "extraordinary and compelling reasons warrant the reduction." USSG § 1B1.13(1)(A).[1] This policy statement limits "extraordinary and compelling reasons" to only include the following four circumstances:

(A) Medical Condition of the Defendant. –

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is –
>
>> (I) suffering from a serious physical or medical condition,
>>
>> (II) suffering from a serious functional or cognitive impairment, or
>>
>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

---

[1] This policy statement predates the FSA and the Sentencing Commission has not since updated it or adopted a new policy statement. This creates an issue because parts of the pre-FSA policy statement do not square neatly with the language of the FSA. *See* U.S.S.G. § 1B1.13 (authorizing compassionate release only on the BOP's motion). Thus, it is unclear whether extraordinary and compelling reasons may be found only from the specific examples listed in the pre-FSA policy statement or if courts can look beyond those examples. Some Circuits have determined that the policy statement is inapplicable to inmate requests for relief and that the court must determine for itself what is an "extraordinary and compelling" reason. *See e.g., United States v. Brooker(Zullo)*, 976 F.3d 228, 236 (2d Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020). However, the Eighth Circuit has determined that the policy statement, while not binding, cannot be ignored and should provide guidance on what constitutes "extraordinary and compelling" reasons. *See U.S. v. Marcussen*, 15 F.4th 855, 859 (8th Cir. 2021).

>(B) Age of Defendant. – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
>(C) Family Circumstances. –
>
>>(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>
>>(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
>(D) Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

Defendant argues that the combination of the ongoing Covid-19 pandemic, his medical issues, and his confinement creates extraordinary and compelling reasons that permits his release from confinement. ECF No. 37, p. 6-12. Defendant asserts that his medical conditions, such as chronic sinusitis, and his race, as an African American, make him especially vulnerable to serious adverse impacts from contracting Covid-19. *Id*. at p. 10-12. Defendant also argues that his confinement makes contracting Covid-19 more likely, especially in light of the emergence of more transmissible Covid-19 variants. *Id*. at p. 8-10. Defendant concludes that his situation is extraordinary and compelling under U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I)'s reference to serious medical ailments that he cannot provide self-care for while in a prison environment. *Id*. at p. 12.

The Government's response in opposition argues that Defendant's current circumstances are not extraordinary and compelling and do not permit release. ECF No. 43, p. 7-11. The Government first notes that Defendant's medical records indicate that his cited issues have been resolved. *Id*. at p. 8. The Government further notes that Defendant has refused a Covid-19 vaccination of multiple occasions, indicating that Defendant does not seriously fear the threat of Covid-19 infection. *Id* at p. 8-11. Finally, noting the low numbers of infected staff and inmates at Defendant's facility of confinement, the Government argues that Defendant has not

5

demonstrated that BOP precautions against the spread of Covid-19 or the medical care available at his current facility are inadequate to protect Defendant. *Id*. at p. 11.

The Court finds that Defendant has failed to show that there are extraordinary and compelling reasons justifying a reduction in his sentence and a release from confinement. The Court notes that Defendant is correct in his assertion that his race is associated with a higher risk of severe illness or death upon contracting Covid-19.[2] However, most of Defendant's medical conditions, even if they have not been resolved, are not ones associated with a higher risk of severe illness or death upon contracting Covid-19.[3] Also, Defendant declining vaccination against Covid-19 weighs significantly against his argument that he views his conditions as significantly threatening. Available Covid-19 vaccinations have been shown to significantly reduce the risk of death and severe illness, and available boosters have demonstrated effectiveness against newly emergent strains of Covid-19.[4] The BOP is currently offering vaccinations and all booster shots in accordance with CDC guidance.[5] This available means for protection against Covid-19 significantly undermines Defendant's argument that he is not able to take steps to care for himself in his current confinement. Therefore, the Court cannot view Defendant's circumstances as extraordinary and compelling under the provision regarding specific medical conditions under U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I) or the general catch-all provision of U.S.S.G. § 1B1.13 cmt.

---

[2] Ctrs. for Disease Control & Prevention, *Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19: Information for Healthcare Professionals* (Dec. 14, 2022), https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (noting that certain racial and ethnic minorities are more likely to be infected and incur severe impacts upon infection).
[3] Ctrs. for Disease Control & Prevention, *People with Certain Medical Conditions* (Dec. 14, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (being overweight is the only condition listed by Defendant that is associated with higher risk of severe illness).
[4] Ctrs. for Disease Control & Prevention, *COVID Data Tracker* (Dec 14, 2022), https://covid.cdc.gov/covid-data-tracker/#vaccine-effectiveness (chart shows initial effectiveness of vaccinations and the efficacy of boosters against new strains).
[5] Fed. Bureau of Prisons, *COVID-19 Coronavirus* (Dec. 14, 2022), https://www.bop.gov/coronavirus/index.jsp (noting that initial vaccinations and boosters are available to all BOP inmates).

n.1(D). Accordingly, Defendant has failed to show that his circumstances justify release under 18 U.S.C. § 3582(c)(1)(A)(i) and his motion must fail.

### C. § 3553(a) Sentencing Factors

In a motion for release pursuant to the FSA, courts must also determine if the sentencing factors under 18 U.S.C. § 3553(a) support an inmate's release. 18 U.S.C. § 3582(c)(1)(A). That statute provides:

> (a) Factors To Be Considered in Imposing a Sentence. — The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> > (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> >
> > (2) the need for the sentence imposed—
> >
> > > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > >
> > > (B) to afford adequate deterrence to criminal conduct;
> > >
> > > (C) to protect the public from further crimes of the defendant; and
> > >
> > > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> >
> > (3) the kinds of sentences available;
> >
> > (4) the kinds of sentence and the sentencing range established for—
> >
> > > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission];
> >
> > (5) any pertinent policy statement [issued by the Sentencing Commission];
> >
> > (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> >
> > (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Defendant argues that the sentencing factors support his request for release. ECF No. 37, p. 12-14. Defendant notes that his disciplinary record during confinement has been good with the exception of a few violations for possessing a cell phone and cell phone charger. *Id*. at p. 12. Defendant also points to his educational achievements and completion of drug treatment programs as indicative of his rehabilitation during confinement. *Id*. at p. 13. Defendant also notes that he knows where he will reside upon release and what employment he will seek. *Id*. Noting that he has served nearly three-quarters of his sentence, Defendant then argues that the Covid-19 pandemic has created a harsher sentence than initially anticipated and that release at this time would not undermine his sentence's deterrence purposes. *Id*. at p. 13-14.

The Government argues that an examination of the sentencing factors precludes releasing Defendant. ECF No. 43, p. 12-14. The Government notes that the § 3553 factors were already evaluated at the time of Defendant's sentencing and helped determine the current term of confinement. *Id*. at p. 13. The Government contends that release at this time would undermine the seriousness of Defendant's crime, respect for the law, and the deterrence effects of his sentence. *Id*.

The Court finds that an examination of the § 3553(a) sentencing factors do not support Defendant's request for early release. As the Court determined above regarding the risks the pandemic poses to Defendant, the availability of Covid-19 vaccines and boosters prevents the Court from viewing his sentence as now harsher than when initially set. Therefore, the 100-month sentence is still necessary to reflect the seriousness of his offense and provide adequate deterrence to future criminal conduct under § 3553(a)(2)(A) and (B). The fact that Defendant was deemed a career offender and committed his latest offense while on parole for a prior State offense also weighs against him in light of § 3553(a)(2)(C)'s consideration of protecting the public from future

crimes of a defendant and § 3553(a)(1)'s consideration of the circumstances surrounding Defendant's conviction and his overall criminal history.[6] The Court notes Defendant's educational achievements during confinement, efforts towards rehabilitation, and the stability he anticipates upon release. However, these positive steps cannot overcome the required examination of the circumstances surrounding his conviction and his criminal history. Accordingly, the Court finds that sentencing factors do not support Defendant's request for release and his motion must also fail on this ground. 18 U.S.C. § 3582(c)(1)(A).

### D. Safety Considerations Under 18 U.S.C. § 3142(g)

The requirement under 18 U.S.C. § 3582(c)(1)(A) that any reduction be consistent with any applicable policy statements issued by the Sentencing Commission necessitates an evaluation of the 18 U.S.C. § 3142(g) safety factors. *See* USSG § 1B1.13(2). The factors for consideration under § 3142(g) are:

> (g) Factors to be considered.-The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning-
>
> > (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> >
> > (2) the weight of the evidence against the person;
> >
> > (3) the history and characteristics of the person, including—
> >
> > > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

---

[6] Defendant's criminal history is found in the Revised Final Presentence Investigation Report. ECF No. 27, p. 9-11.

9

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

Defendant argues that his release is appropriate in light of the § 3142(g) safety considerations. ECF No. 37, p. 14-15. Defendant contends that his time served has achieved its rehabilitation and deterrence purpose and diminished any risk to the community if he is released. *Id*. Defendant reiterates his educational and drug treatment accomplishments during confinement and asserts that they are indications of the lawful and productive life he will lead upon release. *Id*. at p. 14.

The Government argues that Defendant's criminal history precludes release under the safety considerations. ECF No. 43, p. 12-13. The Government points to the nature of Defendant's current conviction of distributing methamphetamine combined with multiple prior drug convictions that qualified Defendant as a career offender. *Id*. at p. 13. The Government contends that this history indicates a higher risk to the community and should preclude any consideration of releasing Defendant before the end of his imposed sentence. *Id*.

The Court finds that Defendant's motion must fail under the § 3142(g) safety considerations for the same reasons it failed under the sentencing considerations. Defendant's current conviction involved distribution of a controlled substance, which directly weighs against

him under § 3142(g)(1).  Also, Defendant's extensive criminal history and the fact that he was on parole at the time he committed the crime for which he is currently confined weigh heavily against him under § 3142(g)(3)(A) and (B).  Accordingly, the Court finds that the § 3142(g) safety considerations preclude the Court from finding that Defendant's release is appropriate at this time and his motion must also fail on this ground.  18 U.S.C. § 3582(c)(1)(A).

### III. CONCLUSION

For the reasons stated above, the Court finds that Defendant's Motion to Reduce Sentence (ECF No. 37) and Motion for Compassionate Release (ECF No. 31) should be and hereby are **DENIED**.

**IT IS SO ORDERED**, this 15th day of December, 2022.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge